924 So.2d 258 (2006)
STATE of Louisiana
v.
Thanh NGUYEN.
No. 05-KA-569.
Court of Appeal of Louisiana, Fifth Circuit.
February 3, 2006.
*260 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Bobby R. Malbrough, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD and SAM A. LeBLANC, III, Pro Tempore.
SAM A. LeBLANC, III, Judge Pro Tempore.
Defendant, Thanh Nguyen, appeals his conviction and sentence on a charge of second degree murder in violation of La. R.S. 14:30.1. For reasons that follow, we affirm.
The Jefferson Parish Grand Jury returned an indictment, charging defendant with the second degree murder of Son Hong Nguyen on January 28, 2002. Defendant filed several motions, including motions to suppress and to appoint a sanity commission, in which he alleged he spoke very little English and very little Vietnamese. The record shows that defendant was provided with an interpreter in court proceedings.
The trial court initially found defendant lacked the mental capacity to understand the proceedings against him or to assist in his defense. The trial court issued an order committing defendant to a forensic facility until such time as that facility reported he was able to comprehend the proceedings against him and to assist in his defense. Two evaluations were conducted and a sanity commission was convened. After a subsequent hearing, the defendant, with the help of an interpreter was found competent to stand trial. The trial court also denied the motion to suppress.
Defendant, with the help of an interpreter, was tried by a jury and found guilty as charged. In due course defendant was sentenced to life imprisonment, without *261 benefit of probation, parole or suspension of sentence. It is that judgment that is before us in this appeal.

FACTS
Detective Donald Clogher of the Jefferson Parish Sheriff's Office testified that on January 28, 2002, at 2:51 a.m. he received a call to investigate a homicide, at an apartment complex  1528 Abby Road, in Harvey, Louisiana. He testified that he knew of a call twenty minutes earlier about a fight involving the defendant and the victim, at the Cheers Bar, not far from the homicide location. Upon arrival, he saw the victim's body on the ground and.45 caliber casings nearby. One of the casings was located behind the rear wheel of an automobile. There were also markings in the grass indicating that it was hit with projectiles. Later Detective Clogher interviewed four witnesses, three friends of the victim and defendant's roommate. He prepared a photographic lineup for all of them. After all four witnesses identified the defendant, Thanh Nguyen, as the shooter, an arrest warrant was issued.
The defendant fled the state going first to Michigan and then to Alabama.
The defendant's residence was searched with the consent of his roommate. The search of the residence revealed an unfired.45 caliber round in a cup in the living/dining room area, numerous paperwork, and photographs of the defendant. Later, Detective Clogher tracked the defendant to La Batre, Alabama, where he was arrested and returned to the jurisdiction.
After being advised of his rights in English in Alabama and waiving them, defendant indicated that he understood them. According to Detective Clogher on the way back to Louisiana the defendant admitted he accompanied the shooter but denied that he shot the victim. But later in the same conversation he admitted he killed the victim.
After he arrived in Louisiana, the defendant was again advised of his rights. This time he was advised twice, once in English, and once in Vietnamese. Sergeant Doe Tran assisted Detective Clogher in translation.
The defendant gave two statements that were recorded on audiotape and transcribed. In the first, he maintained that someone else was the shooter. In the second, however, he confessed to shooting the victim. Both statements were played for the jury.
The State presented two eyewitnesses to the incident. Thanh Le testified that on the evening of January 28, 2002, he was at Club Cheers, a Gretna club, when a fight ensued. Le did not know the reason for the fight. He left the club with Gai Nguyen, his wife, and the victim, Son Nguyen. He did not know the defendant when the incident took place, but he had seen him at the club. On the drive to the victim's home, Le saw a blue Honda Accord. After the victim stepped out of the car at his residence, the driver of the Honda, later identified as the defendant, stopped and ran out of the car after the victim. Defendant pulled out a gun and shot at the ground. Le heard the gun go off four or five times as the victim ran around the corner of the apartment. He did not actually see the victim get shot because he was parking the car and finding the apartment.
Thanh Le's wife, Gai Nguyen, also testified at trial. Her testimony corroborates that of her husband. She too saw defendant driving behind their vehicle in a blue Honda Accord. She testified that when they arrived at the victim's residence, the victim got out of their car while the defendant was standing behind their car. When the victim walked out, the defendant started shooting the gun. She heard about four shots. She saw the defendant hold *262 the gun and shoot it, the victim run during the shooting to a stop sign, and then she saw him "laying down."
At trial, the defendant, Thanh Nguyen, testified that he met the victim once before the January 28, 2002 incident. The defendant admitted that he and the victim had an altercation at Club Cheers. He testified that before the altercation occurred the victim was touching a friend's girlfriend on her "behind and everywhere." He told the victim not to do it, then went back to the table and sat down. The defendant maintained that the victim caused others in the bar to come over and "beat him." A brawl ensued after someone hit defendant on the head with a beer bottle. As a result of the fight, defendant was bleeding from his mouth and nose, and sustained bruises all over his body. Defendant testified that he left the club and went to the victim's apartment. The victim arrived at the same time and the defendant told the victim to stop because he wanted to talk to him. The victim stopped, ran, stopped again and, after the defendant told him he wanted to talk, he ran again. The defendant admitted to shooting the victim because he was "mad," upset, and could not control himself, after the four people at the club beat him.
The defendant testified that he shot the victim with a gun he got from Hung Nguyen who was driving the Honda. He claimed that he did not intend to shoot the victim. His intent was to "shoot everywhere." He went to the victim's apartment to point a gun at him "to scare him so I could beat him up," but the victim ran away, so he shot him. The defendant claimed that he did not see the victim lying on the ground until he was driving away. When defendant realized the victim had died he fled first to Michigan and then to Alabama where he was apprehended.

LAW
On appeal defendant assigns two errors for our review. In the first he asserts the trial court erred in denying his motion to suppress the statements. In the second he argues the evidence presented by the State is insufficient to support the conviction of second degree murder.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Austin, 04-993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, 875, writ denied, 05-830 (La.11/28/05) 916 So.2d 143; State v. Hearold, 603 So.2d 731, 734 (La. 1992). The appellate court must consider all of the evidence introduced at trial, even evidence which the court admitted erroneously. State v. Lamothe, 98-2056 (La.11/25/98) 722 So.2d 987, citing Hearold, 603 So.2d at 734. Accordingly, we will review the assignment relating to sufficiency first.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact can accept or reject the testimony of any witness. State v. Baker, 01-1397, (La.App. 5 Cir. 4/30/02), 816 So.2d 363, 365. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence. Id. An appellate court should not second-guess the credibility determinations of the trier of fact or re-weigh *263 the evidence absent impingement on the fundamental due process of law. Id.
Defendant admits he shot the victim. The thrust of defendant's argument on sufficiency is that the evidence shows he acted in the heat of the moment without the requisite specific intent to establish second degree murder. Defendant argues he should have been convicted of the lesser included offense of manslaughter.
In order to prove second degree murder, the State must show the killing of a human being, and that defendant had the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the defendant, and the intent to kill or to inflict great bodily may be inferred from the extent and severity of the victim's injuries. State v. Keating, 00-51 (La.App. 5 Cir. 10/18/00), 772 So.2d 740, 743, writ denied, 00-3150 (La.10/12/01), 799 So.2d 494. A defendant's act of aiming a lethal weapon and discharging it in the direction of his victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1197.
To support a conviction of manslaughter, the evidence must show that the homicide, which would have been second degree murder, was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). See also, State v. Hicks, 01-1064, (La.App. 5 Cir. 4/10/02), 817 So.2d 192, 197, writ denied, 02-1580 (La.5/30/03), 845 So.2d 1068. The provocation shall not reduce the homicide to manslaughter, if it is proven that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. La.R.S. 14:31(A)(1). State v. Hicks, supra.
According to Detective Clogher, 20 minutes elapsed between the time he was called to investigate the homicide, and the time of the call reporting the club fight. The State presented the testimony of Dr. Susan M. Garcia, a forensic pathologist with the Jefferson Parish Coroner's Office, who testified that she performed the autopsy on Son Hong Nguyen. She examined the body, and found one lethal entrance wound from a bullet on the left back and one exit wound on the front of the body.
Two eyewitnesses to the incident testified. Thanh Le and his wife, Gai Nguyen, acknowledged that there was a fight at the club. They left the club with the victim and drove him home. These witnesses testified that when they arrived at the home, they saw the defendant exit his car, pull out a gun and begin shooting. According to the Gai Nguyen, the defendant drove behind them as they drove to the victim's home. Both witnesses heard at least four gunshots and they saw the victim run away during the shooting.
In the present case, the State proved that the defendant followed the victim home after a fight in a bar and fired at least four shots, killing the victim. From the testimony the jury could have reasonably concluded that the defendant had the required state of mind, intent to kill or to inflict great bodily harm, when he aimed a lethal weapon and discharged it in the direction of the victim. State v. Hidalgo, supra.
In addition, it appears that the jury reasonably rejected the defendant's contention *264 that he committed the murder in sudden passion or heat of blood. The State proved that at least 20 minutes passed from the time the call came in about the fight at the bar and the murder of the victim. Further, the shooting did not take place at the bar. The defendant left the bar and followed the victim home before shooting him. Given the evidence presented by the State in this case, we find a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. We find no merit in this assignment.
Because we find evidence presented sufficient to support the conviction, we will now address defendant's second argument relating to suppression of the statements.
The Vietnamese defendant sought to suppress three custodial statements: his oral statement he gave in English during the ride from Alabama to Louisiana that followed his arrest and two later English and Vietnamese audiotapes he made at the Jefferson Parish Detective Bureau with the assistance of a police sergeant/interpreter. The defendant argues that his lack of understanding of the English language caused him to give statements to investigating officers without fully understanding the consequences of waiving his rights.
The trial court denied the defendant's motion to suppress the statements. However, the court allowed defendant to present the issue of whether the translation of the Vietnamese to English transcribed translation were reasonably accurate and allowed the parties to substitute a more accurate translation of the statements if necessary.
We note that the defendant introduced the first statement at trial for purposes of his defense. In that statement, defendant denied shooting the victim, claiming that he merely accompanied the shooter. Defense counsel presented the statement to show that defendant had difficulty speaking English. Because the defendant introduced that statement into evidence, the issue of whether the trial judge erred in admitting the statement on the basis that it was coerced, induced or not freely or voluntarily given is moot.
At trial, the court clarified that the individual interpreters for the State, the defendant and the court all agreed on the version of the transcribed statement that was taken second, and that translation was introduced. Because all parties were in agreement as to that statement, there is no issue of accuracy of translation before us.
The thrust of defendant's argument regarding the admission of statements given is that he has insufficient understanding of the English language to meet the voluntary requirements of an admissible statement.
We first find a serious question as to whether the defendant preserved his objection to the admissibility of the content of the remaining statements where he confessed. When Detective Clogher testified as to the content of the oral statement where the defendant confessed to the shooting, defense counsel did not object. This oral statement is virtually identical to the defendant's second statement, which was introduced by the State at trial without objection by the defendant. Also introduced without objection by the defense was the Alabama English waiver of rights form and the Jefferson Parish Vietnamese waiver of rights from. Further, the defendant's testimony at trial was virtually identical to the content of his out-of-court confessions. Because some of the conferences were not transcribed, we cannot make a determination that defendant waived his right to present this issue on appeal.
*265 The erroneous admission of a confession or a statement is a trial error, which is subject to a harmless error analysis. State v. Merritt, 04-204, p. 4 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1082-1083, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228. An error is harmless, if it does not affect substantial rights of an accused. La.C.Cr.P. art. 921. Id. The error is harmless, if a guilty verdict was surely unattributable to the error. Id.
In the present case, the defendant admitted, in his trial testimony, that he killed the victim. In addition, there was other overwhelming evidence of guilt of the crime for which he was found guilty. Among other things, the State presented the testimony of two eyewitnesses who described the defendant's shooting.
Defendant's statements were cumulative of eyewitness testimony that he fired several shots. Moreover, his statements corroborated his trial testimony, which he offered in mitigation. Thus, under the circumstances any harm associated with the admission of the disputed evidence given in earlier statements was eliminated.
Here the jury made a credibility determination and rejected the defendant's claim that he only wanted to frighten the victim. It apparently attached great weight to the fact that 20 minutes elapsed between the time of the fight and the shooting. It was Detective Clogher who testified at trial to the time between the two calls of the fight and the homicide. The defendant's statements did not provide this information.
After considering the effect that the out-of court confession may have had on the jury, in the light of all the other eyewitness evidence, the admission of the confession was harmless because the guilty verdict was surely not attributable to the alleged error. Accordingly, we find any error in admission of the out-of court statements was harmless.
Upon review of the record for errors patent, we find the trial court did not properly inform the defendant of the commencement date of the two-year period within which to file an application for post-conviction relief. The minute entry for December 2, 2005 indicates the defendant has two years after his judgment conviction and sentence has become final to file for post-conviction relief. However, the sentencing transcript indicates that the trial judge did not inform the defendant of the appropriate period for filing an application for post-conviction relief as required by La.C.Cr.P. art. 930.8. It is well settled that when the transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
Therefore, we remand to the district court with instructions to inform the defendant of the proper provisions of La. C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.
We affirm defendant's conviction and sentence and remand the matter to the trial court for compliance with the order herein.
AFFIRMED AND REMANDED WITH ORDER